UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER M. TIERNEY,

      Plaintiff,

v.                                Case No. 3:23cv24768-MCR-HTC

SERGEANT SCRUGGS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher M. Tierney, a prisoner of the Florida Department of Corrections ("FDOC") proceeding *pro se*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 alleging the Defendant correctional officers used excessive force on him or failed to intervene and stop the excessive force.  Doc. 10.  Defendants Wentz, Carrier, and Scruggs have filed a motion to dismiss arguing, among other things, that Tierney failed to exhaust his administrative remedies.  Doc. 35.  Upon consideration, the undersigned agrees and finds the motion to dismiss should be granted for failure to exhaust administrative remedies.  Because this issue is dispositive, the undersigned does not address the other arguments raised in the motion.

## I.  Background

Tierney sues five Defendants in both their official and individual capacities: (1) Sergeant Scruggs; (2) Officer Wentz; (3) Officer John Doe; (4) Lieutenant McCrannie; and (5) Lieutenant Carrier.[1]  Doc. 10 at 1-4.  His amended complaint contains the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

On January 21, 2021, Tierney was "picked up" by Defendants Scruggs, Wentz, and Doe to be escorted from the Annex of Santa Rosa Correctional Institution ("Santa Rosa CI") to the Main Unit.  During the transport, Scruggs threw Tierney, who was restrained with handcuffs and shackles, down on the ground.  Wentz then kneeled on Tierney's waist and Scruggs smacked him in the face with a radio.  The officers then picked Tierney up and continued the escort.

When the group encountered Defendant McCrannie, Tierney told her what happened but she "didn't care and immediately went to trying to cover-up" Wentz and Scruggs' "criminal actions."  Defendant Carrier then approached the group, said "something about [Tierney] putting [his] hands on staff members[,] and started to swing on [him]."  Carrier struck Tierney on the top of his head and he fell down.  Carrier then kicked Tierney on the top of his head two times while he laid on the

---

[1] Lieutenant McCrannie has not been served and the identity of the Doe Defendant is not currently known.

ground.  The officers picked Tierney up, put a spit-mask on him to conceal the injuries to his head, and completed the escort.

Based on the foregoing, Tierney alleges Scruggs, Wentz, and Carrier: (1) violated the Eighth Amendment by using excessive force; and (2) are liable for assault and battery under Florida law.  Tierney alleges Doe and McCrannie violated the Eighth Amendment by failing to intervene to stop the other officers' use of force. Tierney also asserts a claim under the ADA.  As relief, he seeks compensatory and punitive damages, as well as injunctive and declaratory relief.

## II. Tierney failed to exhaust his administrative remedies.

### A.    Legal Standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy

exceptions. *See Booth*, 532 U.S. at 741 n.6; *see also Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005) (The PLRA "entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'") (citation omitted). Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "Once the court makes

findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The grievance procedures promulgated by the Florida Department of Corrections ("FDOC") generally require an inmate to complete three steps. First, the inmate must file an informal grievance with a designated prison staff member. Second, the inmate must file a formal grievance with the warden's office. Third, the inmate must submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

## B.    Step One of the *Turner* Analysis

Whether Tierney exhausted his administrative remedies regarding his excessive force and failure to intervene claims depends on the interpretation of the formal grievance he filed on March 20, 2021 (log # 2103-119-195). Tierney's formal grievance stated:

> On 3/20/21 at approximately 6:38 p.m. in B-dorm, while I was housed in B2116L, Lt. Carrier was walking around downstairs doing "rounds" when I stopped him to tell him I use to have a lot of respect for him until he kicked me in the head on 1/21/21, while I was being held down by Officers Wentz and Scruggs after Wentz and Scruggs had just threw me down outside the gate coming back to the main unit and Scruggs

smacked me in the face with a radio and picked me up bleeding from a facial laceration from radio and walked me next to open bay dorm coming to B-dorm. On the side of open bay dorm Carrier kicked me in the head after Scruggs and Wentz threw me down again. Sgt. Carrier (at the time Sgt. now Lt.) kicked me 2 or 3 times in the top of my head while Lt. McCrannie watched. I stated to Lt. Carrier how I lost respect for him and he didn't have to beat me up; he can be heard stating on audio/video "you call that getting beat up??" – 3/20/21 approx. 6:38 p.m., he also tells me "it is what it is" because I told him staff lied to him saying I sent [two] officers to the hospital which was his justification/reasoning for beating/kicking me as described above. I told him I would be filing a lawsuit on him to which he replied "you can fabricate whatever … " but he didn't realize he admitted on audio/video to it by saying "you call that getting beat up??" I want audio/video evidence preserved for future litigation and I.G. notified as I.G. should of already done investigation into U.O.F. as Scruggs and Wentz falsified scenario that I attempted to spit on Scruggs. There was one other officer who witnessed this and said nothing.

Doc. 35-1 at 3. The response to this formal grievance stated:

> Your request for administrative remedy or appeal has been received, reviewed and evaluated. This incident is under review by the use of force unit of the Office of the Inspector General. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling. Based on the above information, your grievance is approved. Future inquiries concerning these allegations should be addressed to the institutional inspector by submitting a DC6-236, inmate request. A copy of this grievance has been forwarded to the institutional inspector.

Doc. 35-1 at 2.

Defendants argue Tierney's March 20, 2021 formal grievance did not exhaust his claims related to the January 21, 2021 use of force because: (1) the grievance was about the conversation he had with Carrier on March 20; and (2) the purpose of

the grievance was to preserve video of the conversation and alert the Office of the Inspector General ("OIG") to its existence. Doc. 35 at 9-10.

Tierney disputes Defendants' interpretation of the grievance and response. In Tierney's view, his formal grievance notified prison officials about both the January 2021 use of force and the March 2021 conversation with Carrier where he allegedly made incriminating statements. *See* Doc. 44 at 3 (asserting the grievance "is addressing more than one issue"). Tierney also reads the response to the grievance as confirming that prison officials viewed the grievance as relating to the January 2021 use of force.

Accepting Tierney's view of the March 2021 formal grievance and response as true, the grievance, which was approved, exhausted his administrative remedies. *See Williams v. Dep't of Corr.*, 678 F. App'x 877, 881 (11th Cir. 2017) (approval of grievance satisfies the PLRA's exhaustion requirement). Thus, this suit is not subject to dismissal at the first *Turner* step, and the undersigned must proceed to the second *Turner* step.

## C.    Step Two of the *Turner* Analysis

For several reasons, the undersigned finds the evidence supports a determination that the March 20, 2021 formal grievance only concerned the conversation Tierney had with Carrier and Tierney's request for the preservation of

evidence and, thus, did not exhaust the claims against Defendants raised in this suit arising out of the January 2021 use of force.

First, the formal grievance is dated March 20, 2021, the very same day the conversation between Tierney and Carrier took place. Thus, the March 20 conversation—and not the January 21 use of force—clearly triggered Tierney to file the grievance.

Second, the language Tierney uses in the grievance centers on the conversation he had with Carrier on March 20. Tierney explains that on March 20 he told Carrier that he lost respect for him based on the events on January 21. Tierney then recounts the statements Carrier made to him ("you call that getting beat up," "it is what it is," and "you can fabricate whatever"). The statements Carrier allegedly made during the conversation are the focus of the grievance because Tierney believed the statements were incriminating. *See* Doc. 35-1 at 3 (Carrier "didn't realize he admitted on audio/video to it by saying 'you call that getting beat up'").

Furthermore, the only relief Tierney sought in the grievance was related to the conversation: (1) Tierney asserted Carrier's statements were recorded on "audio/video"; (2) Tierney provided the specific date and time of the statements ("3/20/21 approx. 6:38 p.m."); and (3) Tierney specifically stated he wanted the "audio/video evidence preserved for future litigation and I.G. notified[.]" Doc. 35-

1 at 3.  Nowhere in his response to Defendants' motion does Tierney dispute that the only relief he sought in the formal grievance was to preserve the "audio/video evidence" of his conversation with Carrier, and to alert the OIG to the video's existence.  Thus, the purpose of the grievance was not to inform the OIG about, or seek relief related to, the January 21, 2021 use of force.  Instead, it was to preserve the "audio/video evidence" of the conversation with Carrier and to alert the OIG to the incriminating statements Carrier allegedly made.[2]

Third, while the formal grievance includes details regarding the events of January 21, 2021, Tierney admits he included those details in the grievance "in order to inform I.G./administration what the conversation was referring to so the comments between L.T. Carrier and [him] would not be taken out of context or misconstrued to be referring to a different incident."  Doc. 44 at 3; *see also* Doc. 44 at 29 (stating he included those details in the formal grievance only so prison officials "would not take our conversation out of context as you can't tell what we were referring to").  Thus, Tierney concedes the information he provided in the formal grievance about the January use of force only served to provide context to the true purpose of the grievance, which was to grieve the conversation he had with Carrier.  *See Cadet v. Wheaton*, 2024 WL 694122, at *2-3 (N.D. Fla. Jan. 16, 2024),

---

[2] While the formal grievance mentions the "I.G. should of already done investigation into U.O.F.," it does not request that the OIG investigate the January 21, 2021 use of force.

*report and recommendation adopted*, 2024 WL 691364 (N.D. Fla. Feb. 20, 2024) (finding that information relating to a failure to protect claim, which inmate provided as background information in a grievance explicitly asking for a disciplinary report to be overturned, was not sufficient to exhaust inmate's failure to protect claim); *Jean-Rene v. Joseph*, 2021 WL 6693731, at *3 n.5 (N.D. Fla. Dec. 28, 2021), *report and recommendation adopted*, 2022 WL 228156 (N.D. Fla. Jan. 25, 2022) (finding grievance was insufficient to properly grieve inmate's claim that he was entitled to the application of earned time credits ("ETCs") because the grievance only requested that his request for home confinement under the Cares Act be reviewed and "only tangentially discussed his ETCs as he alleged it supported his claim to be placed on home confinement").

Fourth, a grievance filed on March 20, 2021, about a January 21, 2021 use of force would have been untimely under the FDOC's regulations and Tierney knew as much. *See* Fla. Admin. Code r. 33-103.011(1)(a) (requiring informal grievances to be received within 20 days of the incident); *id.* at 33-103.011(1)(b) (requiring formal grievances to be received within 15 days of the incident). On March 4, 2021, Tierney filed a grievance appeal to the Secretary which complained that he had filed several informal grievances on February 1, 2021, which never received a response. Doc. 35-2 at 3. Tierney explained that one of those informal grievances related to an "illegal use of force by staff members"; Tierney alleged those informal grievances

"disappeared" and stated that "now [he was] out of time to file them." *Id.*; *see also* Doc. 44 at 28 (declaration from Tierney stating he filed an informal grievance "after the incident described in the complaint" that described "in detail" the "attacks and deliberate indifference of everyone involved" which was "never returned"). Because Tierney claims to have submitted an informal grievance relating to the January 21, 2021 use of force on February 1, 2021, *and* he knew the March 20, 2021 formal grievance he filed could not be used to exhaust claims related to the use of force because it would be untimely,[3] the only reasonable interpretation of the March 20, 2021 formal grievance is that it relates to the conversation with Carrier that occurred earlier that day.

Indeed, as Defendants argue, if *in fact* Tierney had written an informal grievance on February 1, 2021, related to the January 21, 2021 use of force, *and* the institution failed to respond, he could have nonetheless proceeded to the next step of the grievance process (i.e., filed a formal grievance) and continued through the process to judicial review even if the institution and the FDOC failed to respond at

---

[3] An inmate may also seek leave from the FDOC to submit a grievance out of time.  Fla. Admin. Code r. 33-103.011(2).  Under the FDOC's regulations, the FDOC may allow an out of time grievance "when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority as defined in paragraphs 33-103.002(15)(b) and (c), F.A.C., or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." *Id.*  However, Tierney did not ask the FDOC to grant him an extension of time to file a grievance about the January 21, 2021 use of force and there is no indication in the record that the FDOC would have waived the procedural bar.  Moreover, Tierney's assertion that he filed a grievance about the January 21, 2021 use of force on February 1, 2021, shows it was feasible for him to file a grievance within the relevant time period.

every turn. *See* Fla. Admin. Code r. 33-103.011(4) ("[E]xpiration of a time limit [for a response] at any step in the process shall entitle the complainant to proceed to the next step of the grievance process."). Tierney, however, did not do that. In other words, he did not complete all the steps for exhausting the February 1, 2021 grievance about the January 21, 2021 use of force. Instead, he started a new set of grievances on February 23, 2021, complaining generally about the unavailability of grievances. *See* Doc. 35-2 (February 23, 2021 formal grievance and March 4, 2021 grievance appeal complaining about grievances that went unanswered).

In his response, Tierney abandons the unavailability argument, focusing instead on the sufficiency of the March 20, 2021 grievance.[4] Tierney argues the response to the March 20, 2021 formal grievance supports a finding that the grievance exhausted the claims arising from the January 21, 2021 use of force because the response stated: "This incident is under review by the use of force unit of the [OIG]." Doc. 35-1 at 2. While, standing alone, it is not clear whether the phrase "this incident" in the response refers to the January 21, 2021 use of force or to the March 20, 2021 conversation between Tierney and Carrier, Defendants have

_____

[4] Although Tierney's response to Defendants' motion claims prison officials prevented inmates from accessing grievance forms at Santa Rosa CI, the undersigned notes the FDOC records produced by Defendants undermine that claim, as they show Tierney was able to file 50 informal grievances and 42 formal grievances at Santa Rosa CI between January 21, 2021, and December 19, 2023. Doc. 35-6. In any event, Tierney's response argues exclusively that his March 20, 2021 formal grievance exhausted his administrative remedies and states the availability of grievance forms "need not be addressed." Doc. 44 at 2-3.

presented evidence that prison officials did not consider the formal grievance to relate to a complaint about excessive force and, thus, the "incident" referred to was the conversation.

As Defendants point out, the formal grievance was classified as a "13F" and "General Suggestions/Comments" grievance in the FDOC's grievance logs, and not as a grievance relating to excessive force.[5] Doc. 35 at 10-11; *compare* Fla. Admin. Code r. 33-103.013(10) (indicating grievances classified as "10" are "complaints against staff" regarding "improper conduct") *with* Fla. Admin. Code r. 33-103.013(13) (indicating grievances classified as "13" are "miscellaneous" grievances which include "all other types of complaints not covered" by the other classification codes). The FDOC's failure to classify Tierney's formal grievance as an excessive force grievance supports the finding that the response referred to the March 20 conversation. Because the FDOC contemporaneously classified the March grievance as a miscellaneous grievance, rather than an excessive force grievance, the March grievance was insufficient to exhaust Tierney's claims. *Cf. Jones v. Eustice*, 2024 WL 4031082, at *4 (N.D. Fla. Aug. 8, 2024), *report and recommendation adopted*, 2024 WL 4026180 (N.D. Fla. Sept. 3, 2024) (rejecting defendant's argument that inmate failed to exhaust his administrative remedies

---

[5] The evidence submitted by both parties indicates grievances about excessive force are classified as "10H." Docs. 35-6; 35-7; 44 at 33.

because: (1) inmate's grievance appeal raised the defendant's allegedly unnecessary use of chemical agents; and (2) Secretary construed inmate's grievance appeal as involving a complaint about excessive force instead of a complaint about how his informal grievance was handled because it was coded as a "10" grievance, which involves "complaints against staff," rather than as a "9" grievance, which involves complaints about the "grievance process").

Tierney raises two additional arguments to support his claim that he exhausted his administrative remedies. First, Tierney notes officials wrote "UOF," which stands for use of force, under the "13F" notation on the grievance. Doc. 35-1 at 3. This argument, however, is not convincing. As Tierney points out elsewhere in his response, handwritten remarks under the classification code can indicate who the grievance should be referred to. Doc. 44 at 13, 37. And it would make sense for the responding official to note that the grievance was going to the institutional inspector and the OIG since the conversation at issue was about a use of force. Thus, a "UOF" notation on the March 20, 2021 formal grievance is not sufficient to show Tierney exhausted his administrative remedies, particularly considering the official who wrote the UOF notation did not classify the grievance as a "10H" excessive force grievance.

Next, Tierney argues a January 2024 grievance he wrote about another allegedly excessive use of force generated a similar response from prison officials

as his March 20, 2021 formal grievance.  *See* Doc. 44 at 33 (response to grievance alleging an improper use of chemical agents stating the grievance was approved and "this incident is under review by the use of force unit of the [OIG]").  Tierney suggests the similarity of the responses supports his assertion that the March 20, 2021 formal grievance exhausted his claims.  However, this grievance *does not* support Tierney's position.

First, almost three years elapsed between the March 2021 formal grievance and the January 2024 grievance; thus, the January 2024 grievance does not provide contemporaneous evidence regarding how grievances were handled at Santa Rosa CI in March 2021.  Second, even if it did reflect how grievances were handled in March 2021, the January 2024 grievance was classified as a "10H" excessive force grievance; this undermines Tierney's argument because it confirms the March 2021 formal grievance was not classified, or treated, as an excessive force grievance.  Lastly, for the reasons explained above, it would not be unexpected for Tierney's grievance about his conversation with Lieutenant Carrier to be referred to the OIG because the conversation related to a use of force and Tierney requested that the OIG be notified about the conversation.  Accordingly, Tierney's reference to the January 2024 grievance does not support his argument that his March 20, 2021 formal grievance exhausted his claims.  To the contrary, it shows that Tierney is well aware of how and when to file a grievance relating to a use of force incident.

Finally, Tierney's requested interpretation of the March 20, 2021 grievance would make it impermissibly involve two complaints in one grievance. He argues not merely that the March 20, 2021 grievance was about the conversation he had with Carrier; instead, Tierney argues the March 2021 grievance discussed two issues: (1) the March 2021 conversation *and* (2) the January 2021 use of force. However, under the FDOC's regulations, an inmate may address "only one issue or complaint" in a grievance. *See Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005) (citing Fla. Admin. Code r. 33-103.005(2)(b)(2)).

Based on the foregoing, the undersigned finds, under step two of the *Turner* analysis, Tierney's March 2021 formal grievance did not exhaust his excessive force and failure to intervene claims.[6] The evidence indicates the March 20, 2021 conversation with Carrier spurred Tierney to file the grievance, the grievance only sought relief with respect to the video of the conversation, and prison officials did not treat the grievance as an excessive force grievance. *See Simpson v. Holder*, 200 F. App'x 836, 838, 840 (11th Cir. 2006) (finding inmate failed to exhaust his administrative remedies when his grievances "tangentially" referred to his claims,

---

[6] The formal grievance also failed to exhaust Tierney's ADA claim because it never suggests any of the Defendants discriminated against him based on a disability. Because the grievance omitted any reference to facts which would support an ADA claim, Tierney's ADA claim is unexhausted. *See See Arias v. Perez*, 758 F. App'x 878, 881 (11th Cir. 2019) ("A prisoner must exhaust each claim that he seeks to present in court.") (citation omitted); *Goldsmith v. White*, 357 F. Supp. 2d 1336 (N.D. Fla. 2005) (finding inmate's claim of discrimination based on sexual orientation was unexhausted because inmate filed grievances complaining that defendant took his contact lenses but never mentioned that his sexual orientation was the reason for taking the contact lenses).

but the grievances did not request a remedy with respect to the claims and the officials' responses show they did not consider those complaints).  Moreover, any attempt to grieve the January 21, 2021 use of force incident in March would have been untimely and Tierney admits he attempted to (but did not) complete the grievance procedures he initiated on February 1, 2021, relating to the January 21, 2021 incident.  Thus, the undersigned concludes Tierney failed to exhaust his administrative remedies and his federal claims are subject to dismissal.

## III.    The Court should also dismiss Tierney's state law claims.

In addition to his Eighth Amendment and ADA claims, Tierney also asserts claims under Florida law, including claims for assault and battery.  It is unclear whether the PLRA's exhaustion requirement applies to state law claims.  *See Arnold v. Sainvil*, 2016 WL 1211013, at *3 (S.D. Fla. Mar. 29, 2016) ("The law in this and other circuits is unclear as to whether the PLRA applies to such a state law claim.").

The PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Most courts have concluded the statute applies an exhaustion requirement only to claims under federal law.  *See McDaniel v. Meisner*, 617 F. App'x 553, 556 n.3 (7th Cir. 2015) ("We note that the exhaustion requirements of the Prison Litigation Reform Act do not apply

to state-law claims."); *Berger v. Godwin*, 2022 WL 797401, at *12 (M.D. Fla. Mar. 16, 2022) (finding inmate's "failure to exhaust administrative remedies is not dispositive of his state law claims" because the "PLRA's exhaustion requirement applies only to an action 'brought with respect to prison conditions under section 1983 of this title, or any other Federal law'"); *Torres v. Corr. Corp. of Am.*, 372 F. Supp. 2d 1258, 1263 (N.D. Okla. 2005) (inmate's "state law claim of negligence does not fall within the ambit of § 1997e(a)"). However, some courts have indicated a failure to exhaust will also bar an inmate's state law claims. *See Hrynczyn v. Mitchell*, 21 F. App'x 299, 301 (6th Cir. 2001) ("[L]ike his federal claims, Hrynczyn's state law claims must also be exhausted. Thus, Hrynczyn's failure to exhaust his available administrative remedies requires that his complaint be dismissed.") (internal citation omitted).

However, the Eleventh Circuit has recently, at least in the context of Rule 41, emphasized the distinction between an "action" and a "claim" and noted an "action" is an entire lawsuit. *See City of Jacksonville v. Jacksonville Hospitality Holdings, L.P.*, 82 F.4th 1031, 1036 (11th Cir. 2023) ("[T]he word 'action' refers to an entire lawsuit and not just particular claims within it."); *In re Esteva*, 60 F.4th 664, 675 (11th Cir. 2023) ("'Action' denotes 'a lawsuit,' 'a civil ... proceeding,' or 'the entire controversy,' whereas 'claim' is used to refer to a particular 'demand for money, property, or a legal remedy[.]' An 'action' generally is made up of multiple such

demands; thus, we have explained, Rule 41(a)'s reference to the voluntary dismissal of 'an action' refers to 'the whole case' instead of particular claims.") (citations omitted).  Thus, section 1997e(a)'s reference to "[n]o *action* shall be brought with respect to prison conditions under section 1983 … until such administrative remedies as are available are exhausted," could be read to extend the exhaustion requirement to supplemental state law claims.

Nevertheless, the Court need not decide the issue because, under either interpretation of § 1997e(a), Tierney's state law claims should be dismissed.  If § 1997e(a) applies to state law claims, Tierney has not exhausted his administrative remedies with respect to those claims and they are subject to dismissal.  And if § 1997e(a) does not apply to state law claims, the Court should decline to exercise jurisdiction over Tierney's state law claims because there are no pending federal claims.  *See* 28 U.S.C. § 1367(c)(3) (stating a district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction).  Indeed, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 868 n.4 (11th Cir. 2008) ("Because the district court properly dismissed Hernandez's federal

claims, it properly chose not to exercise supplemental jurisdiction over his related state law claims."); *Berger*, 2022 WL 797401, at *12-14 (dismissing federal claims based on inmate's failure to exhaust administrative remedies and declining to exercise supplemental jurisdiction over state law claims). Thus, under either interpretation of § 1997e(a), Tierney's state law claims should also be dismissed.[7]

Accordingly, it is RECOMMENDED:

1. That Defendants Wentz, Carrier, and Scruggs' motion to dismiss, Doc. 35, be GRANTED.

2. That Tierney's Eighth Amendment and ADA claims be DISMISSED WITHOUT PREJUDICE due to his failure to exhaust his administrative remedies.[8]

3. That Tierney's state law claims also be DISMISSED WITHOUT PREJUDICE.

4. That the Clerk be directed to close the file.

At Pensacola, Florida, this 13th day of December, 2024.

---

[7] Embedded within Tierney's response is a request that the Court appoint him counsel to help him add and litigate a conspiracy claim and retaliation claims. Doc. 44 at 25. However, such a request cannot be made in a response to a motion to dismiss; instead, it must be made through a separate motion. *Cf. Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). Furthermore, requesting counsel for Tierney would be pointless, as his claims in this case are unexhausted.

[8] Because Tierney failed to exhaust his administrative remedies, the claims against the unserved Defendants (Lieutenant McCrannie and Officer John Doe) should also be dismissed. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies).

*/s/ Hope Thai Cannon*
_____
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.